J-S16032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.L.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 173 WDA 2026 |

Appeal from the Decree Entered January 2, 2026
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2025-00038B

| | | |
|---|---|---|
| IN RE: H.J.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  F.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 174 WDA 2026 |

Appeal from the Decree Entered January 2, 2026
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2025-00038A

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.:                **FILED:  June 30, 2026**

F.C. ("Mother") appeals from the decrees which involuntarily terminated her parental rights to her son, K.L.M., born in September 2023, and her

daughter, H.J.M., born in December 2021 (collectively, "the Children").[1]  Upon

review, we affirm.

A prior panel of this Court set forth the following relevant factual and

procedural history in affirming orders that changed the Children's permanency

goals from reunification to adoption:

> On February 21, 2024, the Blair County Office of Children, Youth and Families (["CYF"]) obtained emergency custody of the Children, as well as their two teenage siblings, N.M. and Ka.M. CYF had received information about "substance abuse (methamphetamines) and domestic violence in the presence of [the] Children."  Order for Emergency Protective Custody, 2/21/24, at 1.  When a CYF caseworker went to the home, "it was discovered that the Children were present and there were syringes laying out that were accessible to the Children."  *Id.*  Mother tested positive for methamphetamines, admitted to using methamphetamines, and "also confirmed that she was currently on probation."  *Id.*  After obtaining emergency custody of the Children, CYF placed them with D.E. (["Foster Mother"]) and R.E. (["Foster Father"]) (collectively, ["Foster Parents"]).
>
> On March 1, 2024, the Children were adjudicated dependent with a goal of reunifying with Mother.  [*See*] Order, 3/1/24, at 4. The court ordered Mother to comply with services to assist her in refraining from drug use and criminal activity, and to ensure that her home was safe and habitable.  [*See*] *id*. at 5-6.  The court held an initial permanency review hearing on May 29, 2024.  At that time, Mother was incarcerated.  The court found that Mother had made minimal progress toward reunifying with the Children, and that the Children "were doing very well" with Foster Parents. *See* Order, 8/30/25, at 6.  The court held permanency review hearings on August 16, 2024, November 13, 2024, and February

---

[1] By separate decrees also entered on January 2, 2026, the orphans' court involuntarily terminated the parental rights of H.J.M's biological father, J.J.N. The Children's putative father, M.M., voluntarily relinquished his parental rights, and the court entered decrees to this effect on January 2, 2026. Neither J.J.N. nor M.M. appealed from the respective decrees or participated in this appeal.

5, 2025, and continued to conclude that Mother was not progressing toward reunification with the Children.

In May 2025, CYF requested that the Children's permanency goals be changed to adoption. The court held hearings on May 22, 2025, and June 12, 2025. . . . CYF [] presented the testimony [of] Hollidaysburg Borough Police Sergeant Richard Oldham [("Sergeant Oldham")] and CYF caseworker Dawn Gardini [("Ms. Gardini")].

Sergeant Oldham testified that shortly after the Children were adjudicated dependent, Mother was incarcerated in Blair County Prison for violating her probation. [*See*] N.T., 5/22/25, at 12-13. He related that while Mother was incarcerated, methamphetamine and suboxone were discovered in her sock, and as a result, Mother incurred additional criminal charges. [*See*] *id*. at 13-14.

*Interest of H.M.*, 972-973 WDA 2025, 2026 WL 173445 at *1 (Pa. Super. 2026) (unpublished memorandum) (footnote omitted; cleaned up).

While Mother was incarcerated, the Children visited her once per week. *See* N.T., 12/23/25, at 33-34. Upon her release from prison in approximately April 2025, Mother completed an inpatient rehabilitation program. *See* Orphans' Court Opinion, 1/2/26, at 3. Thereafter, on May 1, 2025, Mother began residing at Sojourner House, a six-to-nine-month residential recovery program. *See* N.T., 10/30/25, at 27-28. Initially, while in the program, Mother had in-person visits with the Children once every two weeks. *See* *H.M.*, 2026 WL 173445 at *2.

In May 2025, CYF requested that the Children's permanency goals be changed to adoption. By orders entered on June 13, 2025, the orphans' court granted the petitions and ended Mother's visitation with the Children.[2]

We glean from the record that Mother had to leave Sojourner House in August 2025 because she no longer had physical contact with the Children, and, therefore, she could not progress through the phases of the program. **See** N.T., 12/23/25, at 29-30. We note that, upon leaving Sojourner House, Mother went to a halfway house but absconded within thirty-six hours of arriving there. Mother ultimately went to reside at an "RV campground" with her father. **Id**. at 45-47.

On September 23, 2025, CYF filed petitions seeking the involuntary termination of Mother's parental rights to the Children, then two years old and nearly four years old, respectively, pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). The orphans' court conducted evidentiary hearings on October 30, 2025, and December 23, 2025, during which the Children were represented by a guardian *ad litem* ("GAL"), Tyler A. Rowles, Esq. ("Attorney Rowles").[3] CYF offered the testimony of, *inter alia*, Ms.

---

[2] Mother timely filed notices of appeal. On January 21, 2026, a separate panel of this Court affirmed the juvenile court's goal change orders. **See H.M.**, 2026 WL 173445.

[3] Section 2313(a) of the Adoption Act "requires the appointment of counsel who serves the child's legal interests in contested, involuntary [termination of parental rights] proceedings." **In re Adoption of L.B.M.**, 161 A.3d 172, 180
*(Footnote Continued Next Page)*

Gardini and Carrie Smay ("Ms. Smay"), who are CYS caseworkers. CYF also introduced, and the court admitted, various exhibits. Additionally, the orphans' court, at the request of CYF, incorporated the Children's dependency records.[4] *See* N.T., 10/23/25, at 16-18. Mother, who was then pregnant, testified on her own behalf on the final day of the hearing.

_____

(Pa. 2017) (footnote omitted). Our Supreme Court has explained that "where a child's legal and best interests do not diverge in a termination proceeding, an attorney-GAL representing the child's best interests can also fulfill the role of the attorney appointed per [s]ection 2313(a) to represent the child's legal interests." *In re. T.S.*, 192 A.3d 1080, 1088 (Pa. 2018) (citation omitted). Further, in cases where the trial court appoints one attorney "to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* whether the [trial] court made a determination that those interests did not conflict." *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020).

Here, the orphans' court appointed Attorney Rowles to serve as the Children's GAL and legal interest counsel. *See* Order 9/25/25. As to K.L.M., who was only two years old and unable to express his preferred outcome at the time of the termination hearing, we apply the presumption of *T.S.*, that there cannot be a conflict between a child's best interest and legal interest where a child is "very young and preverbal." *T.S.*, 192 A.3d at 1092. Further, as to H.J.M., who was nearly four years old at the commencement of the termination hearing, the orphans' court confirmed that no conflict existed. *See* Orphans' Court Opinion, 1/2/26, at 14. As such, we conclude that the Children's right to counsel pursuant to section 2313(a) was satisfied in this case.

[4] We note with displeasure that the certified record does not contain CYF's exhibits or the Children's dependency records. We remind counsel, "Appellant has the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Commonwealth v. Wint*, 730 A.2d 965, 967 (Pa. Super. 1999) (citations and internal quotation marks omitted); *see also* Pa.R.A.P. 1921 *Note* (stating, "[u]ltimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials") (citation omitted). However, this misstep has not hampered our meaningful review of this appeal.

By decrees entered on January 2, 2026, and accompanied by an opinion, the orphans' court involuntarily terminated Mother's parental rights to the Children pursuant to section 2511(a)(2), (5), (8), and (b). Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. In lieu of authoring a Rule 1925(a) opinion, the orphans' court filed a statement pursuant to Rule 1925(a) directing this Court to the certified record and the analysis in its opinion accompanying the decrees.

On appeal, Mother raises the following issue for our review: "Whether the [orphans'] court erred in terminating" her parental rights?[5] Mother's Brief at 4.

Before we address the merits of Mother's issue, we must determine if she has waived it for lack of development of her argument. "It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority." **In re M.Z.T.M.W.**, 163 A.3d 462, 465 (Pa. Super. 2017); **see also** Pa.R.A.P. 2119(a) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities). Where an appellate brief fails to provide any discussion of a claim

---

[5] Attorney Rowles filed a letter in this Court stating that he joins in CYF's appellee brief.

with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. *See In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010). This Court will not act as counsel by developing an argument for an appellant, nor will we scour the record to find evidence to support an argument for the appellant. *See Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018). Instead, we will deem the issue to be waived. *See id*.

Here, Mother relies on her self-serving testimony in claiming that the orphans' court abused its discretion in failing to credit her with "resolving her criminal case, successfully completing drug and alcohol [treatment], participating in Sojourner [House,] and continuing with those programs even once the goal was changed. Mother did everything legally possible to see [the C]hildren and was denied at every turn." Mother's Brief at 19. Mother cites generally to section 2511(a) and (b), which governs this matter, but she fails to apply the facts of this case to these statutory provisions. *See id*. at 11-13. Notably, Mother does not specifically analyze the separate elements of section 2511(a)(2), (5), (8) or (b), nor does she cite to any case law interpreting these subsections. *See id*. at 13-19. Because Mother failed to develop her claim and support it with relevant legal authority, we conclude that she has waived her claim. *See M.Z.T.M.W.*, 163 A.3d at 465; *see also In re A.C.*, 991 A.2d at 897; Pa.R.A.P. 2119(a).

Even if Mother's claim was not waived, we conclude that she is not entitled to relief. Our standard of review in termination of parental rights cases is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

***Interest of M.E.***, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct set forth in section

2511(a) that may warrant termination. *Id*. at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of the section 2511(a) subsections by "clear and convincing evidence," the court then assesses the petition pursuant to section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the orphans' court's determination as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm termination. *See M.E.*, 283 A.3d at 830 (*citing In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Our analysis in this case will focus upon 23 Pa.C.S.A. § 2511(a)(2) and (b),[6] which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

---

[6] Given our disposition with respect to section 2511(a)(2), we need not review the orphans' court's findings regarding section 2511(a)(5) or (8). *See In re K.R.*, 200 A.3d 969, 979 (Pa. Super. 2018) (*en banc*) (observing that this Court may proceed to a review of one subsection of section 2511(a) "[w]ithout considering the orphans' court's determinations" under any other subsection).

* * * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*. (*citing In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)).

We have long recognized that, "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443. Relatedly, while a parent's incarceration is not automatically dispositive with respect to termination, it is a relevant and potentially determinative factor to consider pursuant to section 2511(a)(2).

*In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012). As our Supreme Court has explained:

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id*.

If the orphans' court concludes that adequate grounds for termination exist pursuant to section 2511(a), the court then turns to section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the [s]ection 2511(b) analysis." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023).

In weighing the parent child bond pursuant to section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. Indeed, as our High Court has explained, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

"The extent of any bond analysis . . . necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). However, our Supreme Court has concluded that "only a necessary and beneficial" parental bond should be maintained. *K.T.*, 296 A.3d at 1109. A bond is considered to be "necessary and beneficial" if its severance would cause "extreme emotional consequences" or significant, irreparable harm. *Id*. at 1109-10.

In its opinion accompanying the decrees which involuntarily terminated Mother's parental rights, the orphans' court found as follows:

> Since at least February of 2024, [] Mother [has] demonstrated a continued incapacity and neglect of the [C]hildren. The [C]hildren were taken out of custody of Mother . . . on an emergency basis in February of 2024. . . . The criminal actions and supervision violations of Mother [had] resulted in [her] incarceration, until April of 2025. . . .
>
> Mother had some contact with [the Children] while she was in Blair County Prison. However, that contact was also interrupted as a result of Mother's own misconduct in prison. When she was released, Mother began to progress, engaging in counseling, completing her treatment at Pyramid and advancing at Sojourner House. During her visits with the [C]hildren[,] Mother describes a bond with the [C]hildren. Despite this testimony, [the court] seriously question[s] how much of a bond could exist under these circumstances given the ages of the [C]hildren.
>
> As stated above, [the court] reject[s] Mother's credibility. [The court] do[es] not and cannot give any credence to Mother's testimony in light of her history and the fact that she testified that she continues to take marijuana illegally while pregnant with another child. In coming to [this] conclusion, [the court] heed[s] the guidance of the appellate courts and emphasize the [C]hildren's present and future need for essential parental care, control or subsistence necessary for their well-being.

Mother's progress is noted but the fact remains that [Mother is] essentially dependent on [her current paramour, J.L.,] for housing, is currently laid off from a job that she held for a short time, and still uses drugs illegally. Nor do[es the court] find credible Mother's testimony that her use of marijuana is medically endorsed during her pregnancy. [The court] do[es] not subscribe to the view that it is "only marijuana" and we will not construe [s]ection 2511(a)(2) to compel us to ignore the [C]hildren's need for a stable home and strong, continuous parental ties, particularly where this family has already been profoundly disrupted by the actions of the parents.

Orphans' Court Opinion, 1/2/26, at 11-13.

Based upon our review, we conclude that the orphans' court's findings with respect to section 2511(a)(2) are well-supported in the certified record. There is no dispute that Mother was incarcerated from approximately April 2024 until April 2025. *See* Mother's Brief at 13. By the time she was released, the Children had been in CYF's custody for over a year. Ms. Gardini, a CYF caseworker, testified that visitation between Mother and the Children ceased completely following the juvenile court's June 2025 orders changing the Children's permanency goals from reunification to adoption. *See* N.T., 10/30/25, at 70. Ms. Gardini also testified that CYF's contact with Mother was sporadic at that time, and, once Mother left Sojourner House at the beginning of August 2025, there was no indication that Mother was engaging in any services or submitting to drug screens. *See id*. at 50-51, 56-57. Ms. Gardini further stated that, while Mother claimed to graduate from the program at Sojourner House, she failed to provide a certification of completion despite Ms. Gardini's requests. *See id*. at 50-51.

Ms. Smay, another CYF caseworker, testified that Mother was pregnant and due to give birth in May 2026. *See* N.T., 12/23/25, at 10-11. Mother agreed to submit to a urine drug screen the day before the termination hearing on December 23, 2025, but the results were inconclusive. *See id*. at 9. The following morning, Ms. Smay performed an oral drug screen wherein Mother testified positive for marijuana. *See id*. Mother claimed she was waiting for a medical marijuana card to arrive in the mail and that her prenatal medical providers endorsed her utilization of marijuana. *See id*. at 21-22, 51. Given Mother's history of illicit drug use and incarceration, the orphans' court did not find Mother credible, and we will not disturb this finding. *See M.E.*, 283 A.3d at 829 (explaining that this Court must accept the trial court's findings of fact and credibility determinations if they are supported by the record).

Because the orphans' court's findings with respect to section 2511(a)(2) are supported by clear and convincing evidence within the certified record, and we discern no error of law or abuse of discretion, we conclude that even if Mother had not waived her claim, she would not be entitled to relief pursuant to section 2511(a)(2).

With respect to section 2511(b), the orphans' court provided the following findings:

> [The court] again recognize[s] Mother's testimony that she has a bond with the Children. While [the court] question[s] the strength of that claim, the existence of a bond does not necessarily result in denial of a termination petition. [*See*] *T.S.M.*, 71 A.3d at 267. Instead, the court must examine the effect on the child of severing such bond. *Id*. Here, the Children

are stable and loved by Foster Parents and their sibling, N.L.M., in the same home. The [C]hildren have enjoyed that stability and love since February of 2024. We do not believe that there will be any deleterious effect upon the Children in severing any bond with Mother. There is no evidence that severing the parental bond will cause the Children to suffer any emotional consequences.

Orphans' Court Opinion, 1/2/26, at 14.

Based on our review, we conclude that the orphans' court's findings with respect to section 2511(b) are supported by the record and free from any error of law or abuse of discretion. The record reflects that the Children have resided in the same pre-adoptive foster home since their removal in February 2024. *See H.M.*, 2026 WL 173445 at *1; *see also* N.T., 10/30/25, at 58-62. Further, in March 2025, CYF placed their older sister, N.L.M., in the same home. *See H.M.*, 2026 WL 173445 at *1; *see also* N.T., 10/30/25, at 58-62. Ms. Gardini testified that the Children are "very attached" to their older sister. N.T., 10/30/25, at 61. Ms. Gardini further stated the Children are thriving developmentally with Foster Parents who provide them with stability and who desire to adopt them. *See id*. at 61-62. Based upon the foregoing, we discern no abuse of discretion in the court's determination that termination of Mother's parental rights best served the Children's developmental, physical, and emotional needs and welfare pursuant to section 2511(b).

As such, even if Mother had not waived her claim for lack of development, we discern no error or abuse of discretion by the orphans' court's in reaching its decision to involuntarily terminate her parental rights pursuant to section 2511(a)(2) and (b). Accordingly, we affirm the decrees.

Decrees affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  6/30/2026